```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

|  |  |  |
|---|---|---|
| MIRANDA STACKS PYNKALA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-02366-SHM-cgc |
| | ) | |
| BLAKE ENTERPRISES, LLC; | ) | |
| RELIABLE FINANCE COMPANY, | ) | |
| INC. a/k/a RELIABLE FINANCE | ) | |
| COMPANY OF MEMPHIS d/b/a | ) | |
| RELIABLE FINANCE COMPANY OF | ) | |
| MEMPHIS EXECUTIVE | ) | |
| SUPPLEMENTAL INCOME PLAN; | ) | |
| DWIGHT BLAKE; and FINBOND | ) | |
| NORTH AMERICA GROUP, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE RECORD**

Plaintiff Miranda Stacks Pynkala brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. ch. 18 §§ 1001-1461, against Defendants Blake Enterprises, LLC; Reliable Finance Company, Inc. ("Reliable Finance") a/k/a Reliable Finance Company of Memphis d/b/a Reliable Finance Company of Memphis Executive Supplemental Income Plan (the "Plan"); Dwight Blake; and Finbond Group North

America, LLC[1] (collectively, "Defendants"). (See D.E. No. 1.) Before the Court are two motions. The first is Plaintiff's Motion for Judgment on Administrative Record. (D.E. No. 31.) The second is Defendants' Motion for Judgment as a Matter of Law on the Record. (D.E. No. 36.) For the following reasons, Plaintiff's motion is DENIED, and Defendants' motion is GRANTED.

**I.   Background**

Pynkala filed her complaint on June 6, 2019. (D.E. No. 1.) She alleges that she started working for Blake Enterprises, LLC and/or Reliable Finance (collectively, the "Company") sometime during the year 2000. (Id. at 3.) She alleges that the Company offered her the opportunity to participate in the Plan on or about February 1, 2008. (Id.) Pynkala became a covered participant in the Plan on February 1, 2008. (See D.E. No. 24-1 at 225.)

The Plan contained several relevant provisions. It provided for the payment of retirement benefits in two circumstances. The first was Normal Retirement, which meant retirement from working at the Company after the employee became sixty-five. (Id. at 221-22, ¶¶ 2.10 and 4.1.) The second was Early Retirement, which meant retirement from working at the Company, with the written

---

[1] Although Pynkala captioned the case using the name Finbond North America Group, LLC, the correct name for the entity is Finbond Group North America, LLC.

consent of the Company, after the employee became sixty-two. (See id., ¶¶ 2.4 and 4.2.) The Plan was unfunded. (Id. at ¶ 6.) It was to be interpreted under and governed by Tennessee law, which is also the law of the state in which this Court sits. (Id. at ¶ 13.3.)

On September 17, 2018, Pynkala received notice that the Plan was terminated. (Id. at 230.) She was not yet sixty-two. Pynkala exhausted the Plan's administrative remedies by filing a claim for benefits. (Id. at 237-39.) After receiving no response from the Plan Administrator within 90 days, she requested a review of the no-action denial of her claim. (Id. at 240-41.)

The parties have filed cross-motions for judgment on the administrative record in accordance with the procedure outlined in Wilkins v. Baptist Healthcare Systems, Inc., 150 F.3d 609 (6th Cir. 1998) (Gilman, J., concurring). Id. at 617-620 (explaining that neither a bench trial nor summary judgment adjudication is appropriate in ERISA cases and outlining a procedure of motions for judgment on the administrative record).

**II. Jurisdiction**

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the question presented by ERISA arises under the laws of the United States.

**III. Standard of Review**

The parties disagree about the standard of review the Court should apply in this case. (Compare D.E. No. 31-1 at 390, with D.E. No. 36-1 at 444.) Pynkala argues for a de novo standard of review. Defendants argue the standard should be arbitrary and capricious.

Defendants argue that the Plan gave discretion to interpret its terms to the Plan Administrator, which would trigger an arbitrary and capricious standard of review. (D.E. No. 36-1 at 444.)

Pynkala argues the standard of review should be de novo for several reasons. First, she argues that the Plan did not give the Plan Administrator authority to interpret the terms of the Plan. (D.E. No. 31-1 at 391-93.) Second, she argues that, if someone other than the Plan Administrator made the decision to deny her benefits, the de novo standard of review would apply. (D.E. No. 31-1 at 393-94.) Finally, she argues that, if the Court determines that the Plan was a top hat plan, the standard of review should automatically be de novo. (D.E. No. 37 at 460-62.)

The Court need not resolve these arguments because, even assuming the de novo standard of review applies in this case, Pynkala is not entitled to retirement benefits. See Becknell v. Severance Pay Plan of Johnson & Johnson and U.S. Affiliated Companies, 644 F. App'x 205, 213 (3d Cir. 2016) ("Even assuming,

4

arguendo, that de novo review applies, we reach the same conclusion . . . ."); McCartha v. Nat'l City Corp., 419 F.3d 437, 442 (6th Cir. 2005) ("In any event, because McCartha's claim fails under either standard of review . . . the point is moot."); DuMond v. Centex Corp., 172 F.3d 618, 621 n.8 (8th Cir. 1999) ("We need not decide which standard of review governs this case, however, as our conclusion would be the same under either standard of review."); Bounds v. Bell Atlantic Enterprises Flexible Long-Term Disability Plan, 32 F.3d 337, 339-40 (8th Cir. 1994) ("Given the unrebutted record evidence supporting the Plan's decision under either ERISA standard of review, we conclude that the district court committed no plain error and its grant of summary judgment must be affirmed.").

**IV. Analysis**

Pynkala asserts that the Court must first determine whether the Plan was a top hat plan. (D.E. No. 31-1 at 390.) The Court need not make that determination. Even accepting Pynkala's argument that the Plan was a defined benefit plan, (see id. at 396), her claim would fail.

Pynkala brings suit under 29 U.S.C. § 1132(a)(1)(B), which allows a civil action to be brought by a plaintiff "to recover benefits due to [her] under the terms of [her] plan . . . ." Becuase Pynkala's suit relies on this provision, whether the Plan was a top hat plan or not, the starting place for resolving

5

the parties' dispute remains the same: a plain language interpretation of the Plan's terms under the federal common law of contracts. See Adams v. Anheuser-Busch Companies, Inc., 758 F.3d 743, 746-47 (6th Cir. 2014) (noting the starting point in determining whether benefits are due under a defined benefit plan is the language of the plan itself); Simpson v. Mead Corp., 187 F. App'x 481, 483 (6th Cir. 2006) (applying "federal common law rules of contract interpretation" when reviewing benefits determination under a top hat plan); Regents of the Univ. of Mich. v. Employees of Agency Rent-A-Car Hosp. Ass'n, 122 F.3d 336, 339-40 (6th Cir. 1997) ("The federal common law as expressed by other circuits requires that the terms of an ERISA plan be interpreted in an ordinary and popular sense, and that any ambiguities in the language of the plan be construed strictly against the drafter of the plan."); see also Pension Benefit Guaranty Corp. v. Findlay Indus., Inc., 902 F.3d 597, 611 (6th Cir. 2018) (quoting Regents of the Univ. of Mich., 122 F.3d at 339) ("In certain circumstances, such as in contract interpretation, 'the federal court may take direction from the law of the state in which it sits' so long as 'the rule used [is] the one that best comports with the interests served by ERISA's regulatory scheme.'").

The parties disagree about the plain meaning of the critical language, § 11 of the Executive Supplemental Income Plan. That section provides:

> The Company reserves the right to amen [sic], modify, terminate or discontinue the Plan at any time. However, no such amendment, modification, termination or discontinuance shall have the effect of reducing an Executive's Normal Retirement Benefit below the amount of [her] Early Retirement Benefit, computer [sic] as of the date of such amendment, modification, termination, or discontinuance.

(Executive Supplemental Income Plan, § 11, D.E. No. 24-1 at 223.) Pynkala asserts that this section provides that once the Plan was terminated, the Company owed her, at a minimum, her Early Retirement benefit. (D.E. No. 31-1 at 398.) Defendants argue that Pynkala was not owed any retirement benefit because her benefit had not yet vested. (D.E. No. 36-1 at 449.) Defendants base their argument on the Plan definitions of Normal Retirement Benefit and Early Retirement Benefit, which are triggered at ages sixty-five and sixty-two, respectively. (Id. at 449-50.)

Defendants' interpretation of the section best comports with federal common law, as informed by Tennessee law, which requires that the Court give effect to all the terms of the contract. See Shell Oil Co. v. Prescott, 398 F.2d 592, 593 (6th Cir. 1968) (citing Edelen Transfer & Storage Co. v. Willis, 66 S.W.2d 214, 216 (Tenn. Ct. App. 1932)) ("Under applicable Tennessee law, as elsewhere, courts should, in ascertaining the

7

intent of the parties to a contract, construe the contract as a whole and give effect to every part thereof.").

Pynkala's interpretation makes the phrase "computer [sic] as of the date of such amendment, modification, termination, or discontinuance" surplusage. Pynkala argues that the "date of termination should have no bearing on calculating the amount to which she is entitled" because her "benefit was specifically defined." (D.E. No. 31-1 at 398.) A more natural reading of the Plan would give effect to the phrase in question through reference to the relevant retirement ages as part of the computation of benefits owed at the time of termination. In other words, Pynkala's Early Retirement Benefit, computed at the time of the Plan termination, was zero, because she was not yet sixty-two.

Pynkala argues that she became vested in her retirement benefits as soon as she and the Company executed the Plan, or alternately, after seven years of employment while working under the Plan, pursuant to 29 U.S.C. § 1053(a)(2). (D.E. No. 31-1 at 400.) Section 1053(a)(2) provides that "participants in a defined benefit plan acquire a nonforfeitable right to 100% of their accrued benefits after no more than seven years of service." Daft v. Advest, Inc., 658 F.3d 583, 586 (6th Cir. 2011).

The problem with Pynkala's argument is that she had no "accrued benefits" in the Plan because the Plan was unfunded.

8

(See D.E. No. 36-1 at 442.) Because "[a] benefit merely contemplated or expected cannot be classified as accrued" and "only funded benefits can be classified as accrued benefits," Pynkala cannot be said to have had any accrued benefits under the terms of the unfunded Plan. Independent Ass'n of Publishers' Employees, Inc. v. Dow Jones & Co., Inc., 671 F. Supp. 1365, 1368 (S.D.N.Y. 1987); see also Black v. Pension Benefit Guaranty Corporation, 983 F.3d 858, 868-70 (6th Cir. 2020) (holding that neither ERISA nor the plan created a legitimate claim of entitlement to "vested, but unfunded, pension benefits").

Because neither the plain language of the Plan nor the statutory requirements of ERISA provide that Pynkala was entitled to receive benefits before she became sixty-two, her claim for benefits fails.

### V. Conclusion

For the foregoing reasons, Plaintiff's motion is DENIED, and Defendants' motion is GRANTED.

SO ORDERED this  26th  day of January, 2021.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

9